STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Chandler Home Industry/ | } | |
| Home Occupation Application | } | Docket No. 128-6-08 Vtec |
| (Appeal of Chandler) | } | |

Decision and Order

Appellant Charles Chandler appealed from a decision of the Development Review Board (DRB) of the Town of Newfane, denying permission for him to operate his electrical contracting business from his residential property as a home industry/occupation. Appellant appeared and represents himself; the Town of Newfane is represented by Samuel H. Angell, Esq.

A number of other appeals involving this property have been resolved in the Environmental Court.[1] In Docket No. 25-2-06 Vtec the Court ruled that the 2.11-acre property was too small to sustain an independent commercial use and an independent residential use on the same property and laid out three alternate options for Appellant's future use of the property:

> Appellant thus has the following three choices: to make the property solely commercial, solely residential, or residential with a home industry or home occupation. That is, he may operate the business on the property and discontinue the residential uses; . . . [h]e may maintain the residential uses on the property . . . and discontinue the commercial uses; . . . or, if an owner of the business were to reside on the property, an application could be filed see[k]ing approval to operate the Chandler Electric business from the residence and accessory buildings as a home occupation or home industry, reducing the scope of the operation to meet the definition of those terms.

---

[1] Docket Nos. 106-6-03 Vtec, 155-8-05 Vtec, 25-2-06 Vtec, 79-4-07 Vtec, and 129-6-08 Vtec.

1

In re Application of Chandler, No. 25-2-06 Vtec, slip op. at 14–15 (Vt. Envtl. Ct. Dec. 6, 2006, aff'd sub nom. In re Chandler Shed and Dwelling Applications, No. 2007-003 (Vt. Oct. 19, 2007) (unpublished mem.). Appellant then moved to the property as his residence, and applied to run his electrical business from the property as a home industry/home occupation.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. One site visit had been taken some years ago, in connection with Docket No. 25-2-06 Vtec; a follow-up site visit was taken by Judge Wright at the conclusion of the hearing in the present appeal, alone by agreement of the parties. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Appellant's property is a 2.11-acre parcel of land known as 1075 Vermont Route 30.[2] It is located in Zoning District B of the Town of Newfane. It has just over 271 feet of frontage on the west side of Route 30, the major paved road through Newfane. It extends back from the road approximately 400 feet, and tapers to a width of approximately 170 feet at the rear lot line. The rear portion of the property is wooded. The property contains three buildings: a mobile home with additions, a storage shed, and a large garage/storage building with two garage doors and an entrance door. One of the garage doors is double height and capable of accommodating a tall commercial vehicle. Appellant and his son now reside at the property.

The Town of Newfane's Zoning Bylaws do not establish separate residential and commercial zoning districts. Rather, certain residential, agricultural, and accessory uses

---

[2] A 2.11-acre parcel contains 91,912 square feet of area. Appellant used calculations on his Exhibit #1 based on 2.1 acres, which calculates to an area that is 436 square feet smaller. The difference is not material to any of the issues in the present case.

2

are permitted uses throughout the town, § 4200,[3] while commercial uses are also allowed anywhere within the town if they comply with § 4400 and obtain site plan approval under Section VI of the Bylaws.

The Zoning Bylaws contain four separate provisions relating to the use category of "home industry/occupation."  See also, generally, Appeal of Wright, No. 62-4-04 Vtec (Vt. Envtl. Ct. Nov. 14, 2005).

Section X, containing the definitions applicable to the Bylaws, defines "Home Industry/Occupation" as follows:

> Any occupation which is customary in a residential area and which occupies a minor portion of the dwelling and appurtenant structures and which does not change the character thereof, including any manufacturing, handicraft, service or hobby providing income, which is performed within or without a portion of a dwelling or in one or more buildings normally appurtenant to a dwelling including, but not limited to, professional office, craft manufacturing as the source of principal livelihood, studios for photographer, artist or musician.  Except further that any activity regularly serviced by trucks having more than two axles shall not be considered home industry.

Section 4110[4] simply restates the statutory provision from 24 V.S.A. § 4412 (2004) that "[n]o provision herein shall infringe upon the right of any resident to use a minor

---

[3]  All citations to section numbers refer to sections of the Newfane Zoning Bylaws unless otherwise specifically noted.

[4]  The numbering convention used in the Bylaws sets out the subsections of, e.g. § 4400 with subsection numbers that are inset and placed in the left margin next to each subsection paragraph.  The Regulations themselves refer to the numbers as merged, so that the section below § 4400 that has the number .20 next to it is actually referred to elsewhere in the Bylaws as § 4420 (see, e.g., reference to § 4420 in § 4471.  This decision will conform to the numbering system as used in the Bylaws, rather than to that used by the Vermont Supreme Court in In re Chandler Shed and Dwelling Applications, No. 2007-003 (Vt. Oct. 19, 2007) (unpublished mem.), which was a system of unmerged numbers (e.g., to use the same example, § 4400.20).

portion of his dwelling for an occupation which is customary in residential areas and which does not change the character thereof."[5]

Section 4231, within the section on "Permitted Uses" and the subsection on "Accessory Uses," allows "[h]ome industries and occupations" as a permitted accessory use "provided that such occupation is incidental to the residential use of the premises and conforms with Section VIII [of the Bylaws, providing performance standards for] Pollution Control."

Section 4471, within the section on "Commercial Uses and Development," exempts "[a]ny home industry" from the requirements of the regulations applicable to commercial uses, "except that each must conform to the requirements of Sections 4420, 4440, 4450, and 4460 of these Bylaws, . . ."[6]

Of these sections, § 4420 establishes the requirements for off-street parking and loading spaces. Subsection (g) requires two spaces (each of at least 200 square feet in area) for each 500 square feet of floor space; subsection (i) allows the DRB to establish a parking and loading space requirement for "other uses" not listed. Section 4440 requires that "any development requiring open storage of commercial materials," except for agricultural products, "shall have planted, around the perimeter of the storage area, evergreen trees, bushes or shrubs which should be expected to reach a height and density adequate to effectively screen the storage within five years of

---

[5] That statute, now found in 24 V.S.A. § 4412(4), has since been clarified to substitute the phrase "and that does not have an undue adverse effect upon the character of the residential area in which the dwelling is located" for the phrase "and which does not change the character thereof."

[6] Section 4471 also regulates signs. If the property does not have a lot frontage of at least 90 feet, as provided in § 4415, then no sign shall exceed nine square feet. If the property does comply with § 4415, § 4471 requires it to conform with "§ 4417." However, the Bylaws have no § 4417; the section of the Bylaws regulating signs is actually § 4290, which would apply to the property as a permitted use. No freestanding sign is displayed at the property at the present time.

4

planting." Section 4450 prohibits the "storage or use of dangerous or explosive materials" unless such storage or use conforms with state or federal regulations. Section 4460, like § 4231 above, requires compliance with the Pollution Control regulations in Section VIII of the Bylaws.

Appellant owns and operates an electrical contracting business, also doing some plumbing and heating contracting, that does business under the names of Chandler Electric Company and Learmont Plumbing & Heating. The telephones for both business numbers are located at the subject property, adjacent to one another. A third telephone number once listed for "Chandler-Learmont Electric LLC" does not exist; at one time Appellant had planned to merge the two business entities. Similarly, Phoenix Electric is not a current business of Appellant's, nor is Phoenix Management, and any telephone numbers listed for either of those trade names do not now exist. Appellant is not in the property rental business. Appellant reports the income of the business on a single Schedule C on his individual tax return, and maintains an 8' x 12' home office in his residence at the property. Other than office work, and possibly the inspection of his business vehicles, discussed below, all of the work Appellant or his employees perform for the electrical contracting business is performed at customers' properties, not at the subject property.

Appellant's business uses at least two two-axle vehicles: a pickup truck with a cap, and a van, both shown in photographs 1, 2, 5, and 6 in evidence in Town's Exhibit B. Appellant's business also uses a large boom or line truck which may have more than two axles, as far as can be determined from the six photographs in evidence in Town's Exhibit B (in which all of that vehicle's axles except for the front one are obscured by the fence).

In 2008 Appellant had a license to run a state motor vehicle inspection station at the property, and inspected a total of 15 vehicles that year, primarily for himself. He does not perform motor vehicle repair work in the large garage/storage building at the

property, but he does work there on his personal snowmobile and on his son's motorcycle, and also stores an antique car there.

The square footage of the residence was not provided in evidence in this appeal, but was reported as approximately 20' x 60' in Docket No. 129-6-08 Vtec. It is all in residential use except for an 8' x 12' office. Only a minor portion of the dwelling is used for the business; the business office use of the residence is incidental to the residential use of the premises.

The square footage of the storage shed was not provided in evidence in this appeal, but was reported as approximately 12' x 61' (732 square feet) in Docket No. 129-6-08 Vtec. It is all in residential use. The large garage/storage building contains 4,200 square feet of area, of which 2,700 square feet is in residential use, including the storage of antiques to be used in Appellant's and his family members' residences, as well as the storage of Appellant's personal snowmobile, an antique car, and his son's motorcycle.. The remaining 1,500 square feet of the large garage/storage building is used for the business, including to store electrical contracting equipment and electrical contracting supplies in preparation for or left over from a job. Approximately 30% (1,500 square feet of the 4,932 square feet) of the two appurtenant structures is used for the business. Only a minor portion of the appurtenant structures is used for the business; the business use of the appurtenant structures is also incidental to the residential use of the premises.

Of the approximately 85,780 square feet of land area on the parcel not covered by the approximately 6,132 square feet of buildings, some undefined area is used for Appellant's residential parking and the outdoor storage of his boat and camper. No

6

evidence was presented of any measurements of the outdoor area on the property used for Appellant's residential parking and storage,[7] or for his patio and gardens.

However, unlike the percentage of indoor space used for business as opposed to residential purposes, the Bylaws do not require that only a "minor portion" of any outdoor storage space be used for business purposes. Rather, the Bylaws require that the overall business use of the property be "incidental to the residential use of the premises," § 4231, and that any open storage of commercial materials be screened with evergreen trees, bushes or shrubs, § 4440.

Appellant measured approximately 6,280 square feet of the outdoor land area as used for the parking of business vehicles and for outdoor storage for the business.[8] At least as of May of 2008, the outdoor storage of apparently business-related materials and equipment on the property included the following items, located on the property in a visually haphazard rather than orderly manner: large reels used for electrical wire or cable, electric or telephone poles, pole equipment, electrical conduit, and some transformers stored behind one of the buildings. Appellant stated that the transformers do not contain PCBs and that they either contain "non-hazardous" oil or are so-called dry transformers, but no evidence was presented as to whether their outdoor storage complies with the pollution control regulations required by §§ 4450 and 4460. The haphazard distribution of business-related materials and equipment outdoors makes

---

[7] Appellant presented evidence on the percentage of outdoor space used for business storage, but allocated the entire remainder of the approximately two acres to "residential use." No evidence was presented as to the total amount of outdoor space used for open storage or outdoor activities related to the residential uses.

[8] Appellant made his property available for the Town to inspect, including inside any of the buildings and inside the trailers. The Town did not present any evidence of measurements or photographs, either from the DRB's site visit or from any inspection by the Zoning Administrator. All the findings as to the square footage of the buildings and the outdoor area used for the business are therefore derived from Appellant's measurement evidence unless otherwise noted.

the business use of the property appear to be more primarily commercial, rather than appearing to be at a level that is incidental to the residential use of the property.

Three box trailers were also stored on the property; no evidence was presented as to whether they were used in the business or for personal purposes. In addition, Appellant has an outdoor patio, a barbecue, a camper, and a boat located outdoors on the property, all of which are for his personal or residential use.

A six-foot-high palisade fence was installed along the front of the property, 100 feet in length, with a wide opening through which an undefined, unpaved driveway passes into the yard formed by the house and the large garage/storage building. The fence was required to be installed during the time period when the property was classified as commercial; the fence has since been painted white. Much of the yard is visible through the wide opening in the fence. Because the property slopes gently upward from the elevation at the roadside, the fence does not entirely screen what is on the property from public view, but it does screen the portion of the yard in front of the house, between the fence and the roofline of the house. Appellant testified that he has installed some plantings and has allowed some vegetation to grow up naturally. However, none of that vegetation is visible above the fence and it does not at the present time perform a screening function. No evidence was presented as to whether any of it will grow to a size within five years to perform a screening function.

No parking spaces are required under § 4420(g) for the business office use in the residence, because under that section a parking space is only required for each 500 square feet or "major portion thereof." The home office is only 96 square feet in area, not quite a fifth of the 500-square-foot requirement, and therefore not a "major" portion. On the other hand, parking spaces must be defined on the property to accommodate the business use of the large garage/storage building. As the use does not fit into a defined category of § 4420, the Court must establish a reasonable parking and loading space requirement under § 4420(i). It is reasonable to require one parking space for each

8

vehicle used in the business, plus a loading space near the garage/storage bldg for deliveries to or pickups from the site. As required in the definition of "Home Industry/Occupation," quoted in full above at p. 3, for the property to qualify as a residential use with a home industry/occupation, it must not be "regularly serviced" by trucks having more than two axles. If the boom or line truck (or any other truck used in the business) has more than two axles, therefore, it must be parked or stored at another location.

Section 4440 requires any outside storage of commercial materials (other than agricultural materials) to be effectively screened by trees or other vegetation. This requirement for the screening of commercial materials is not even a difference established in the Bylaws between a property that is classified and approved as commercial and one that is classified and approved as residential with a home industry/occupation. Rather, it is a requirement for the screening of any open storage of commercial materials on either classification of property.

If the outdoor storage of commercial (business-related) materials will remain on the property, the fact that some of that storage may be partially screened by the fence does not relieve Appellant of the obligation to plant trees or other vegetation sufficient to completely screen any outside storage of commercial materials within five years of its planting. § 4440. Even though the fence was required for the commercial use of the site, and has a partial screening effect, the Bylaws do not appear to provide any waiver mechanism[9] for relieving Appellant of the obligation to attain complete screening under § 4440.

From time to time, Appellant has parked business vehicles on the street side of the fence. While outdoor storage of "commercial materials" must be screened, the Town has not directed the Court to any provision of the Bylaws applicable to the

_____

[9]  See 24 V.S.A. § 4414(8).

9

present appeal that requires outdoor business parking to be screened.[10] However, Appellant's parking of business vehicles outside the fence or otherwise parking them so that they are visible from the roadway, makes the property appear more primarily commercial, rather than the business use appearing to be at a level that is incidental to the residential use of the property. To maintain the business as a home industry/occupation, Appellant will have to maintain the business use of the property at a level that is incidental to the residential use of the property. He may wish to narrow the opening in the fence or otherwise place the parking of business vehicles so that more of the property's yard is screened from view from the road.

Appellant's indoor business use of the property occupies a minor portion of the buildings, and is incidental to his residential use of the premises. While outside storage must be screened, as discussed above, the definition of "home industry/occupation" does not require the business to occupy only a minor portion of the outside area of the property. Nevertheless, the business use of the premises as a whole must be kept at a level that is incidental to the residential use of the premises. § 4231.

The Town of Newfane has not established distinct residential and commercial zoning districts. Appellant's property is in a mixed commercial and residential area, with frontage on the busiest road going through the area. The adjacent property on one side is residential, with a lawn. The other uses in the area along Route 30 are a motel directly across the road, a commercial business that installs screens, another residence, and a logging company. In the past, the outdoor storage of business materials and outdoor parking on Appellant's property has been maintained in a haphazard fashion that created the visual impression of primarily commercial activity. However, in the

---

[10] The question of whether site plan approval is required under § 6100 for a home industry/occupation, as a use other than a one- or two-unit dwelling and its appurtenant buildings and/or structures, is not before the Court in the present appeal. Site plan review analyzes, among other things, the "[a]dequacy of landscaping, screening, and setbacks . . . ." § 6300(c).

future, with the appropriate maintenance and screening as required by this decision, the proposed home industry/occupation use of the property will not change the character of the surrounding mixed-use area, § 4110, and will not have an undue adverse effect upon the character of the mixed-use area in which the dwelling is located, 24 V.S.A. § 4412(4).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the application meets the requirements of the Bylaws and qualifies for approval as a home industry/occupation, but only if the business use of the premises is maintained at a level that continues to use a "minor portion" of the buildings and continues to be "incidental" to the residential use of the premises as a whole, including but not limited to the following specific indications of the business use of the premises:

- One defined parking space of 200 square feet in area must be established and maintained on the property for each of the two-axle vehicles used for the business, plus one defined loading space of the same area for the delivery of any business materials to the property.

- Inspection of motor vehicles within the garage on the property must be limited to Appellant's personal and two-axle business vehicles, and not be carried on as an additional business use of the property.

- The outdoor storage of commercial materials must be completely screened and must continue to be maintained in compliance with § 4440. The total outdoor space not landscaped or forested that is used for personal and residential purposes, including for the personal and residential storage of equipment such as campers or boats and their trailers, must remain the primary use of the outdoor area of the property, so that the business use

11

of the premises as a whole continues to remain an incidental use compared to the residential and personal use of the premises as a whole.[11]

- The storage of transformers and other supplies shall comply with the requirements of §§ 4450 and 4460, as applicable.
- No regular servicing of the property may occur by vehicles having more than two axles, including the boom or line truck used in the business.

On or before September 11, 2009, the Town shall prepare a judgment order to conclude this appeal.

Done at Berlin, Vermont, this 1st day of September, 2009.

_____
Merideth Wright
Environmental Judge

---

[11]    Appellant may choose to remove any or all of the outdoor storage of business-related materials from the property; or to store it on the property so that it is completely screened, and so that its storage area is condensed to represent an incidental use of the premises.

12